James M. Robb, Appellant, *v.* Thomas Robb, in his own right and as Trustee for Ann Eliza Cope, William Oscar Robb and Ann Eliza Cope.

[Marked to be reported.]

*Will—Construction of words " unimproved real estate."*

A devise of all of testator's " unimproved real estate in said city of Philadelphia," does not apply to a farm of sixty-seven acres with three dwelling houses and suitable farm buildings erected thereon, which has been in constant annual cultivation by a tenant farmer for more than twenty years, and which has returned to the owner, in addition to a share of the growing crops, actual money rents amounting to more than $12,000, in eighteen years.

Country property near the built-up part of a city may well be held for a future rise in its value by dividing it into city lots and selling them as such; but while it remains country property, cultivated, occupied and rented as farm land, it remains as improved land, and cannot be converted into land which is unimproved, merely because its owner contemplates selling it in lots whenever the proper time arrives.

Argued Jan. 27, 1896. Appeal, No. 205, July T., 1895, by plaintiff, from decree of C. P. No. 4, Phila. Co., Sept. T., 1892, No. 208, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity for partition.

The case was referred to Richard C. Dale, Esq., as master, who reported in part as follows :

The proceeding was instituted upon a bill in equity filed by James M. Robb, as plaintiff, against Thomas Robb in his own right and as trustee for Ann Eliza Cope, William Oscar Robb and Ann Eliza Cope, defendants, for the partition of certain premises in the bill described, being a tract of land containing about sixty-seven acres in the Twenty-fourth ward of the city of Philadelphia, which tract is hereinafter more particularly described.

On November 10, 1892, Sarah T. Robb filed an intervening petition in the case, setting up that as devisee under the will of Samuel Robb she was seized in fee of an undivided one sixth part of the premises described in the bill, and asking that she

might be admitted as a party to the proceedings for the protection of her rights. To this intervening petition the plaintiff filed an answer denying the interest of the intervening petitioner as stated in her petition, and upon the issue thus raised the cause was referred to the undersigned as examiner and master to take testimony and report the facts and his conclusions to the court.

Samuel Robb, through whom both the plaintiff and intervening petitioner claim, during his life was the owner in fee of an undivided one sixth part of the premises described in the bill. He died June 10, 1889. By his will, duly admitted to probate, he provided as follows:

" All my unimproved real estate in said city of Philadelphia, also in the city of Gloucester, N. J., which I hold in common with others, and all my undivided interest in a certain tract of land known as Milford tract in the county of Schuylkill, Pa., I give and devise unto my brother James M. Robb, his heirs and assigns forever.

" All the rest, residue, and remainder of my estate whatsoever and wheresoever, I give, devise, and bequeath unto my wife Sarah T. Robb, her heirs, executors, administrators and assigns forever, and I appoint her the executrix of this my last will and testament, and request that she will not file an inventory and appraisement of my estate."

From this preliminary statement, it appears that the question which the court is called upon to settle in the present case is: Are the premises described in the bill unimproved real estate in the city of Philadelphia, which Samuel Robb held in common with others, or are the premises to be regarded as improved real estate, and as such a part of the residuary real estate bequeathed to Mrs. Sarah T. Robb?

As the interest of Samuel Robb in the premises was held in common with others, the sole point to be determined is: Are the premises improved real estate or unimproved real estate? If unimproved, Samuel Robb's interest, by the terms of his will, is vested in the plaintiff, James M. Robb; if improved, Samuel Robb's interest is vested in his widow, the intervening petitioner, Mrs. Sarah T. Robb.

Much testimony was adduced before the master. There is substantially no conflict upon the naked facts of the case. The

difficulty arises in drawing the conclusions from these undisputed facts. In order, however, that the court may have before it the facts of the case at length, the master will state his findings of fact.

### MASTER'S FINDINGS OF FACTS.

1. The premises concerning which this litigation arises is :

" All that certain tract, piece, or parcel of land, with the mansion house and other buildings and improvements thereon erected, situate in the Twenty-third ward of the city of Philadelphia, beginning at a point in the middle of Darby and Merion road, and also in Sixty-six street, a corner of this and land of John F. Gross ; " . . . .

This property was acquired by Charles Robb by deed dated April 1, 1872, from Robert J. Mercer and wife. The consideration mentioned in the deed was $67,337, being at the rate of $1,000 per acre. The description above given is the description given in this deed, and the tract thus conveyed was as to fifty-eight acres, part of a tract of seventy-three acres, which Albert Worrell and others by deed dated June 23, 1863, had conveyed unto Robert J. Mercer, and as to nine acres, a tract which William L. Hirst and others by deed dated June 23, 1863, had conveyed unto the said Mercer, and as to about a half-acre, a tract which William Sellers and others by deed dated October 14, 1868, had conveyed unto the said Mercer.

2. Charles Robb was the father of James M. Robb and Samuel Robb. He died January 28, 1875. By the terms of his will he devised to each of his six children an undivided one sixth interest in the above described real estate in fee simple.

3. The fifty-eight acres of the tract which was acquired by Mercer from Worrell, upon which is located the mansion house and other buildings and improvements referred to in the deed from Mercer to Charles Robb, and which, with the remaining acres constituted the seventy-three acre tract conveyed by Worrell to Mercer, were the country seat of a French gentleman who early in the century had improved it with a mansion house estimated to have cost about $15,000 and built in the style of that period. There was a barn and outbuildings and two tenant houses, and appurtenant to the house was a garden and lawn of several acres laid out in the French style. The land covered by the deeds from Hirst and Sellers had no buildings upon it.

Forty years ago, as shown by the testimony of William Sellers, whose birthplace was just across Cobb's creek, the place was in fine condition. It was known as the Frenchman's place, and then maintained in fine style. Since then it has been deteriorating, and is now in a condition in which a large expenditure would be needed to restore the place to the state in which it formerly was.

4. In 1872, at the time of the purchase by Charles Robb, property in that portion of the city was supposed to be on the eve of improvement. For many years, upon the plans of the board of city surveyors, the streets had been plotted through this tract as they had been through the entire county, with the exception of the extreme northerly portion of the Twenty-third ward, but no streets were then or have since been opened through the property, and while some improvements had then been made within about a half mile of the property, the expectations which then existed of early improvement have not been realized, and the property is now as it was at the time of the purchase by Charles Robb, with the exception of the deterioration which time has made in the repair of the structures located upon it.

5. After the purchase by Charles Robb, the property was placed in the care of a tenant farmer, who has occupied one of the tenant houses, and has farmed the place on shares. The nature of the crops is not clearly shown by the evidence. The other tenant house and the mansion house have been rented to tenants, the mansion house renting at from $15.00 to $20.00 a month. The result of the operation of the farm since 1876 is shown by a table as follows :—

|      | RECEIPTS. | TAXES AND EXPENSES. |
|------|-----------|---------------------|
| 1876 | $   778 06 | $   547 16 |
| 1877 | 2,605 90 | 1,254 62 |
| 1878 | 612 43 | 743 88 |
| 1879 | 343 75 | 340 15 |
| 1880 | 657 77 | 409 83 |
| 1881 | 795 74 | 334 83 |
| 1882 | 458 14 | 438 28 |
| 1883 | 731 92 | 317 43 |
| 1884 | 331 74 | 533 43 |
| 1885 | 671 42 | 326 43 |

| | RECEIPTS. | TAXES AND EXPENSES. |
|---|---|---|
| 1886 . . . . | $490 14 | $436 66 |
| 1887 . . . . | 497 02 | 303 31 |
| 1888 . . . . | 523 30 | 418 73 |
| 1889 . . . . | 622 55 | 303 31 |
| 1890 . . . . | 630 00 | 303 62 |
| 1891 . . . . | 526 00 | 327 12 |
| 1892 . . . . | 549 31 | 319 90 |
| 1893 . . . . | 456 71 | 312 59 |

which table shows that the returns of the farm have somewhat exceeded taxes and expenses. The three years preceding 1876, owing to large expenditures, show less favorable results.

6. The present condition of the buildings, as shown by a visit made to them by the master in company with counsel, is that the mansion house is very much out of repair, and it is not in a condition in which a gentleman's family would be willing to inhabit it as a country seat, but the building is a substantial one, it is not a ruin, and, considering its inaccessibility, the rental obtained shows that it is regarded as a habitable structure. The barn and other farm buildings are in poor repair, and not kept in the repair usual among the prosperous farmers of the counties adjacent to Philadelphia; at the same time they are capable of being used as farm buildings.

7. The location of the property is immediately south of Haddington. To the west and south of the tract the adjacent properties are all farms or country seats. To the east are open fields extending to the west wall of the insane asylum property, which is about two miles to the eastward. In the intervening space a few scattering dwellings have been erected, but the district is almost entirely an open common. A map was offered in evidence, made at or about the time of Charles Robb's purchase, showing the courses of the streets running through the tract, and there can be no doubt that it was in the mind of Charles Robb that the property would at some time be developed and improved as city property.

8. Charles Robb had been at various times engaged in real estate operations, purchasing outlying property, cutting it up into lots, and selling that way. The evidence shows the following transactions of this kind:

(*a*) He purchased a country seat containing about twenty-five acres on the banks of the Schuylkill at Christian street, Philadelphia, and opened streets, divided it into lots, built wharves, and sold. Most of these lots had been sold at the time of Charles Robb's death, but a number of ground rents reserved on them remained.

(*b*) He purchased about one hundred acres at Gloucester, N. J., and went through the same process. Many of these lots had been sold at the time of his death, but others remained unsold.

(*c*) He purchased an old country place, or part of an old country place, called Knowlton, at Woodland avenue, Philadelphia, the tract containing about twenty-two acres, and developed it. Most, not all, of these lots were sold before his death.

(*d*) He purchased over three hundred acres of land at Scranton, Pa. He published a map, sold lots, and then opened a coal mine.

9. Samuel Robb at the time of his death was seized and possessed of an undivided sixth part of the following vacant, unimproved lots of ground, producing no income, which he held in common with others, viz: those set forth in schedule No. 1 to the petition of Sarah T. Robb, filed in this case, and some lots of ground in Gloucester City, N. J., and a tract of land in Schuylkill county, Pa.

And also the following undivided interests which he held in common with others, in the following improved real estate, having improvements thereon and producing income, to wit, one sixth interest in the lots and four story brick building thereon, No. 321 Chestnut street, Philadelphia, twenty-one by ninety feet, and Nos. 3, 4, 6 and 8 Hudson street, Philadelphia, in the rear of the above building, forty by eighty-five feet; one twenty-fourth interest in the lots and four-story brick building thereon, Nos. 14 and 16 South Seventh street, Philadelphia, thirty-four by one hundred and six feet; and one half interest in the lot and four-story store thereon, No. 110 North Third street, Philadelphia, eighteen by sixty-five feet.

Samuel Robb was also seized in severalty at the date of his will and death, of the lot with the two-story brick store thereon, No. 945 Passyunk avenue, Philadelphia, fifteen by forty-five

feet, and the lot and two-story brick dwelling thereon, No. 629 Carpenter street, Philadelphia, sixteen by fifty feet.

Samuel Robb was also seized at the date of his will and death of an undivided one twelfth interest in a coal tract of about two hundred and twenty-four acres in Scranton, Pa., including improvements and mortgages on some lots thereof sold, and also some ground rents.

Samuel Robb was also at the dates of his will and death seized of an undivided one half interest in common with others in a lot at the northwest corner of Second and Tasker streets, Philadelphia, the character of which, as improved and unimproved, was the subject of an action of ejectment in this court by the said Sarah T. Robb against James M. Robb, which the verdict of the jury and judgment of the court thereon found to be improved property under said Samuel Robb's will.

And Samuel Robb was also seized in fee simple at the dates of his will and death of " all that certain tract, piece, or parcel of land, with the mansion house and other improvements thereon erected, described in and the subject of the bill in equity and petition of Sarah T. Robb, filed in this cause.

Having considered these facts, the master is of the opinion that the interest of Samuel Robb in the premises in question must be regarded as an interest in improved property, and that consequently the intervening petitioner is entitled to a one sixth interest therein. . . .

Exceptions to the master's report were overruled and a decree entered in favor of the intervening petitioner.

*Error assigned* was above decree.

*John G. Johnson*, *Henry B. Robb* and *Frank P. Prichard* with him, for appellant.—The word " unimproved " not being a word of precise and definite meaning, is to be interpreted, not merely by the physical condition of the land and its surroundings, as the master interpreted it, but by all the circumstances surrounding the use of the word by the testator, and throwing light upon the sense in which he used it : Jarman on Wills, 736 ; McAfee v. Magee, 4 Penny. 94.

Even if the rule adopted by the master be correct, and the word be interpreted by the mere physical condition of the land

and its surroundings, the land in question was unimproved: Schuylkill River etc. R. R. v. Stocker, 128 Pa. 233; Andrew's Church's App., 67 Pa. 512.

*George L. Crawford* and *Samuel Gustine Thompson,* *Loughlin & Dallas* with them, for appellee.—Land is improved on which work has been done or things placed rendering it more fit for use or more capable of producing income: Abbott's Law Dict. 587; Bouvier, 777; Black, 598; 10 Am. & Eng. Ency. of Law, 241; Ross v. Smith, 1 B. & Ad. 910; Lancaster City Road, 68 Pa. 396.

The word "improved" is not a technical one, but one of common speech, and being in a written instrument, required by law to be in writing, is to be construed by the court, gathering the testator's intention from the writing only; the only question being not what he meant, but what is the meaning of his words used: Woodman's App., 42 Leg. Int. 338; Woelpper's App., 126 Pa. 562; Willard's App., 68 Pa. 327; Best v. Hammond, 55 Pa. 409.

The legal construction of a will is not to be affected by parol declarations of the testator: Comfort v. Mather, 2 W. & S. 450; Woodman v. Good, 6 W. & S. 169; Jones v. McKee, 3 Pa. 496; Gilmor's Est., 154 Pa. 523.

OPINION BY MR. JUSTICE GREEN, February 17, 1896:

As a matter of fact the property in question in this case was not "unimproved real estate." The master in his finding of fact thus describes it: "The fifty-eight acres of the tract which was acquired by Mercer from Worrell, upon which is located the mansion house and other buildings and improvements referred to in the deed from Mercer to Charles Robb, and which with the remaining acres constituted the seventy-three acre tract conveyed by Worrell to Mercer, were the country seat of a French gentleman who early in the century, had improved it with a mansion house estimated to have cost $15,000, and built in the style of that period. There was a barn and outbuildings and two tenant houses, and appurtenant to the house was a garden and lawn of several acres laid out in the French style." The master further finds, "After the purchase by Charles Robb, the property was placed in the care of a tenant farmer, who has

occupied one of the tenant houses and has farmed the place on shares. The nature of the crops is not clearly shown by the evidence. The other tenant house and the mansion house have been rented to tenants, the mansion house renting at from $15.00 to $20.00 a month. The result of the operation of the farm since 1876 is shown by a table as follows: " Then follows a tabulated statement of the rentals for every year, 1876 to 1893, varying from $331.74 in 1884, to $2,605.90 in 1877. In the aggregate the rents received from the property by the landlord during the whole period amounted to $12,281.90, and the taxes and expenses incurred during the same period amounted to $7,921.28, showing a net profit to the owners of $4,310.62. In addition to this was the value of the share upon which the farm was let to the tenant, the amount of which is not stated in the report of the master, but which must have been a very considerable sum.

The master further reports that the tract is in the midst of a farming country. He says, " To the west and south of the tract the adjacent properties are all farms or country seats. To the east are open fields extending to the west wall of the insane asylum property which is about two miles to the eastward. In the intervening space a few scattering dwellings have been erected, but the district is almost entirely an open common." The master reports his opinion on the facts thus, " Having considered these facts, the master is of the opinion that the interest of Samuel Robb in the premises in question must be regarded as an interest in improved property, and consequently the intervening petitioner is entitled to a one sixth interest therein." He then proceeds to state the reasons for his opinion, and after a patient and attentive consideration of them, and after a careful reading and examination of the argument of the learned counsel for the appellant, we are constrained to say that in our judgment the opinion of the master is fully sustained by the facts in evidence and by the reasons given by him to its support. The appellant has no title to this land but what can be derived from a description of it in the following words, " All my unimproved real estate in said city of Philadelphia." If this property is not " unimproved real estate," in Philadelphia it is not possible to sustain the appellant's claim. Whether we regard the expression " unimproved real estate," in its strict legal sense,

or in the ordinary and popular sense, it is quite impossible to apply it to the land in question. In the open country mere fencing and cultivation are sufficient to constitute improved lands, and when this is accompanied by the erection and occupancy of dwellings, barns and outhouses, there is nothing left for discussion, under a great array of the decisions of this court upon that subject. It is equally unnecessary to discuss the common understanding of men upon the same subject. With three dwelling houses upon the tract besides suitable farm buildings, with constant annual cultivation by a farmer for more than twenty years up to the time of the inception of this proceeding, with actual money rents received for its occupancy to the amount of more than $12,000 in eighteen years besides the share of the tenant in the growing crops, we cannot but feel that we would be doing violence to both the technical and ordinary meaning of the expression, if we should adjudge the title to this property to pass under the description only of " unimproved real estate." The master reports in his opinion that, " The property, as a whole, has been worked by the farmer who occupies one of the tenant houses. The master has found that while the farm does not appear to have been kept up to the standard which characterizes most of the farms in Delaware and Chester counties it has in fact been maintained as a farm, and is not in the condition of the open commons and vacant lots which for two miles to the eastward fill up the space between this property and the built-up portion of West Philadelphia. So the table of receipts shows a revenue from the farm, which, as farms go when operated on shares may be regarded as a reasonable return from a sixty-seven acre farm." These findings of the master have been approved by the learned court below and are therefore entitled to all the force of a verdict upon the contested fact in question. Giving to the argument that the property was purchased for the purpose of being cut into city lots and sold as such, all the force to which it is entitled, we cannot hold that it is sufficient to change the whole actual character of the property into an antagonistic character. Country property near the built-up part of a city may well be held for a future rise in its value by dividing it into city lots and selling them as such, but while it remains country property cultivated, occupied and rented as farm land it remains as improved land and cannot be

converted into land which is unimproved, merely because its owner contemplates selling it in lots whenever the proper time arrives. We are clearly of opinion that the conclusion reached by the master and confirmed by the learned court below was entirely correct.

Decree affirmed at the cost of the appellant.